In the Matter of the Claim of SILAS E. FINKELL, Respondent, against COBLESKILL AGRICULTURAL SOCIETY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 4, 1927.

Workmen's compensation — claimant was injured while painting buildings of Cobleskill Agricultural Society, a membership corporation, organized under Laws of 1855, chap. 425 — society was not engaged in hazardous employment in trade, business or occupation carried on for pecuniary gain.

The claimant was injured while painting buildings of the Cobeskill Agricultural Society, a corporation incorporated under chapter 425 of the Laws of 1855. The society is a non-stock or membership corporation, has not paid dividends, and no provision is made in its charter for the payment thereof. Its only business, except an occasional and temporary renting of buildings, is the

holding of agricultural fairs or exhibitions, which the law requires it to hold. It was not, therefore, employing workmen in hazardous employment in a trade, business or occupation carried on by it for pecuniary gain.

APPEAL by Cobleskill Agricultural Society from an award of the State Industrial Board made on the 18th day of July, 1925.

*William H. Golding* [*P. C. Dugan* of counsel], for the appellant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

DAVIS, J.    The claimant was injured October 7, 1924, by a fall caused by the breaking of a scaffold upon which he was engaged in painting the buildings of the Cobleskill Agricultural Society. His claim is based upon the theory that his employment by the society was in connection with a business carried on by it for pecuniary gain, and that he was engaged in a hazardous occupation, and he, therefore, became entitled to the remedies furnished by the Workmen's Compensation Law.

The society answers that it has never conducted or carried on a business for pecuniary profit or gain, and has never been engaged in conducting a hazardous employment or business upon its premises.

The society was incorporated June 9, 1882, under the provisions of chapter 425 of the Laws of 1855, being "An act to facilitate the forming of agricultural and horticultural societies." That statute permitted ten or more persons of specified qualifications to become " a body politic and corporate by the name stated in such certificate," capable of purchasing and holding real estate for the purposes of their incorporation to a limited amount, and its officers were charged with the duty " to so manage the property and concerns of the said society, as will best promote the interests of agriculture, horticulture and the mechanic arts; and they shall hold annual fairs and exhibitions, and distribute premiums to the best and most meritorious exhibitors in their several departments."

The statute further provided general rules by which a person might become a member of such a corporate body.    By the constitution of this society any male citizen of Schoharie county purchasing a membership ticket became a member for the succeeding year.    Such a ticket costs one dollar and fifty cents.

We have here, then, a non-stock corporation, now known as a membership corporation.    (Gen. Corp. Law, § 3, subds. 2, 3; Membership Corp. Law [Laws of 1909, chap. 40], art. 13, as amd.; now Membership Corp. Law [Laws of 1926, chap. 722], art. 17.) There was no provision in the statute, the certificate of incorporation, the constitution or by-laws for payment of any dividends. Three officers received small salaries for performing executive duties.

Other officers and directors received nothing. The receipts of the society were mainly from the sale of membership tickets, entrance fees, admission charges, fees for concessions and an annual appropriation made through the Department of Farms and Markets,* distributed for the improvement of breeding of animals " as agent for the State." (Farms and Markets Law, § 286.) .

The narrow question presented here is whether the society was a corporation employing workmen in hazardous employment in a trade, business or occupation carried on by it for pecuniary gain. (Workmen's Compensation Law, § 2, subds. 3, 5.)

The buildings of the society were used annually for agricultural fairs or exhibitions required by law to be held. (Laws of 1855, chap. 425, § 5, as amd.; Membership Corp. Law of 1909, § 192; now Membership Corp. Law of 1926, § 204.) This was the only business of the society. Occasionally in different parts of the year there was a letting of some of the buildings not then in use for storage purposes. A house on the premises was also rented as a dwelling during the time when the fair was not in session. In 1925 the total receipts from all sources were nearly $44,000. The sum received as rent was $249. These rentals, together with the other receipts, all went into a common fund for distribution as premiums and prizes and for ordinary expenses, upkeep and permanent improvements. Some years a surplus would be created; in others there would be a deficit. There never was a distribution of dividends among the members of the society; and could not be without filing a new certificate as a stock corporation. (Membership Corp. Law of 1926, §§ 30, 206.) This was never done and apparently was never contemplated. The case must be determined on the facts as they exist.

Business of this nature is not carried on by the society for pecuniary gain as that term is commonly understood or legally defined. (*Dillon* v. *Trustees of St. Patrick's Cathedral,* 234 N. Y. 225, 229; *Mullen* v. *Little,* 186 App. Div. 169, 172; *Francisco* v. *Oakland Golf Club,* 193 id. 573; *Millard* v. *Townsend,* 204 id. 132.) Nor was the employer conducting a hazardous occupation for profit. The business of the society was that of holding fairs, not painting buildings. Its regular occupation was not hazardous. The special employment of claimant was not undertaken for pecuniary gain. (*Matter of Bargey* v. *Massaro Macaroni Co.,* 218 N. Y.

* Now Department of Agriculture and Markets under State Departments Law (§§ 270, 275, as added by Laws of 1926, chap. 646; Id. § 270, as amd. by Laws of 1927, chap. 207) and under Agriculture and Markets Law (§§ 1, 2, 4, as amd. by Laws of 1927, chap. 207; Id. § 22, subd. 29, as added by Laws of 1927, chap. 207).—REP.

410, 413.) If fundamentally the business was not for gain, an incidental employment not for profit does not bring the employee within the beneficial provisions of the statute. (See *Matter of Mulford* v. *Pettit & Sons*, 220 N. Y. 540, 543.)

This case differs in its facts from *Uhl* v. *Hartwood Club* (177 App. Div. 41; affd., 221 N. Y. 588). In that case a membership corporation was conducting a commercial enterprise unrelated to the principal purpose of its incorporation, and received pecuniary gain. It was engaged in cutting trees which were sold; and the profits and other receipts might under the constitution of the club be distributed to the members as dividends. It was in this occupation, hazardous in its character, that the claimant there was injured. In the case under consideration there was no profit to be derived from painting the fair buildings. It was an act necessary for their preservation in order to carry on the authorized purposes of the society. Whatever remedy claimant may have under other statutes or at common law, liability under such circumstances is not imposed by the Workmen's Compensation Law. The award is without evidence to support it.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

VAN KIRK, Acting P. J., HINMAN, McCANN and WHITMYER, JJ., concur.

Award reversed and claim dismissed, with costs against the State Industrial Board.